John Burton, State Bar No. 86029
jb@johnburtonlaw.com
THE LAW OFFICES OF JOHN BURTON
128 North Fair Oaks Avenue
Pasadena, California 91103

Telephone: (626) 449-8300
Facsimile: (626) 449-8197

Attorneys for Plaintiffs Rachel Clentworth and Geoffrey Maddock

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL CLENTWORTH and GEOFFREY MADDOCK,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BEVERLY HILLS, BEVERLY HILLS POLICE DEPARTMENT, CHIEF SANDRA SPAGNOLI, OFFICER LAWRENCE (4170), OFFICER BILLINGSLEY (3841), OFFICER CUDWORTH (4267), OFFICER THURMAN (3072), OFFICER POPOY (3259), OFFICER LYNCH (2709), OFFICER MAYCOTT (1837), OFFICER TREJO (3563) and Does 1 through 10,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS**<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION AND VENUE

1. Plaintiffs assert claims under 42 U.S.C. § 1983. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

2. Plaintiffs' claims arise out of a course of conduct involving police officials of the City of Beverly Hills, in the County of Los Angeles, State of California, and within this judicial district. Accordingly, venue is appropriate in this Court.

**PARTIES**

3. Rachel Clentworth and Geoffrey Maddock are adults residing in Los Angeles, California, qualified to bring suit on their own behalves.

4. Defendant City of Beverly Hills is a political subdivision of the State of California. Defendant Beverly Hills Police Department (BHPD) is an independent entity subject to suit. Defendant Sandra Spagnoli is the Beverly Hills Chief of Police and is sued in her individual and official capacity as the relevant policy maker.

5. Defendants Officer Horst (4573), Officer Lawrence (4170), Officer Billingsley (3841), Officer Cudworth (4267), Officer Thurman (3072), Officer Popoy (3259), Officer Lynch (2709), Officer Maycott (1837), and Officer Trejo (3563) are employees and officials of the BHPD. Each was involved in some manner with the violations of the Plaintiffs' rights alleged below.

6. Defendants Does 1 through 10 are unnamed because their identities have yet to be ascertained.

7. Each individually named defendant and each doe defendant acted under color of law, within the scope of his or her agency and employment with the City of Beverly Hills and the BHPD, or some other governmental agency. Each acted in concert with the others, and each failed to intervene to prevent the following constitutional violations from taking place.

**FACTS**

8. Plaintiffs' request for records relating to this incident was sent to the Records Custodian at BHPD on September 23, 2015, pursuant to the California Public Records Act, Cal. Gov't Code § 6250 et. seq. The request was denied in principal part. Accordingly, the facts alleged herein are necessarily incomplete. Plaintiffs anticipate amending this complaint when more records become available.

9. Plaintiffs Rachel Clentworth and Geoffrey Maddock are a married couple living in the Los Angeles area. They are citizens of New Zealand holding green cards. They are gainfully employed and have no criminal histories.

10. As a matter of routine, Plaintiffs used their own personal credit cards, with rewards, to purchase "gift cards" at various locations, including CVS Pharmacy located at 8490 Beverly Boulevard in Los Angeles, where the vendor would secure their credit card information. The gift cards function just like credit cards, and they use them to make purchases. They take this extra step, rather than using their personal cards initially, to avoid exposing financial data, as the gift cards are not linked to accounts. In other words, Ms. Clentworth and Mr. Maddock purchase gift cards to limit the risk of identity theft, frozen accounts, and fraudulent purchases on their personal credit cards, especially on international purchases, which are more vulnerable, while at the same time they maximize rewards by using personal credit cards to purchase gift cards.

11. On July 22, 2015, Ms. Clentworth and Mr. Maddock each purchased a $2,000 gift card at CVS. They tendered driver's licenses to a CVS employee, who scanned them into the Point of Sale (POS) terminal, matched their names to the names on the purchasing credit cards, and matched the photos to Ms. Clentworth's and Mr. Maddock's faces. The last four digits of each card were entered into the POS terminal and verified as correct for the account. Once this process was completed the personal credit cards were charged and the $2,000.00 gift cards issued. They left the store without incident, but later learned that for some reason CVS reported this lawful transaction to the Beverly Hills Police Department.

12. Five days later, on July 27, 2015, Ms. Clentworth and Mr. Maddock were in a car together, with Mr. Maddock driving, at approximately 11:30 a.m. As they approached a "STOP" sign they noticed a significant police presence in the area. The couple realized that their vehicle was being surrounded by marked BHPD cars. Shortly after, an officer in a marked BHPD SUV activated its lights to stop the car. Mr. Maddock immediately complied and pulled to the side of the road. Ms. Clentworth turned in her seat to see what was happening behind her. She saw at least five police vehicles and several BHPD officers with firearms drawn and pointed into the vehicle aimed directly at her and her husband.

13. A BHPD officer using his loud speaker ordered Mr. Maddock to turn off his car, show his hands to the officer, and slowly exit the vehicle. A BHPD police dog began barking, heightening the already tense situation with the implied threat of siccing the dog. Mr. Maddock, confused and scared, of course complied fully. Once he was standing, BHPD officers, yelling over the incessant barking of the police dog, ordered Mr. Maddock to lift his shirt, raise his arms, and slowly walk backwards. While those orders were being given to her husband, Ms. Clentworth could hear another officer's voice shouting instructions on how to complete the stop–as if the officers were conducting a live training simulation. This heightened her fear that not only were guns and a vicious attack dog threatening her and her husband, but that the officers doing so were not sufficiently trained.

14. After Mr. Maddock slowly walked backwards, the officers grabbed and tightly handcuffed him, escorted him to a patrol car, and locked him in the back, completing a de facto arrest under clearly established Ninth Circuit law. The BHPD officers offered no explanation for the stop or for Mr. Maddock's arrest.

15. The officers next turned their attention to Ms. Clentworth, still sitting in the passenger seat. Ms. Clentworth tried to access her cell phone to record the incident and put it in her pocket, but was instructed, at gunpoint, to put her hands up. With the police dog still barking, the officers ordered Ms. Clentworth to get out of the vehicle slowly with her back to officers. She was ordered to keep her hands raised and to walk backwards to officers, where she was tightly handcuffed. Ms. Clentworth is informed and believes that although she complied with all police commands, that in retaliation for attempting to film the stop officers applied Mr. Clentworth's handcuffs so tightly she received abrasions. While being cuffed, Ms. Clentworth, an attorney who does not practice criminal defense law, asked the officer if they were being arrested and should be given *Miranda* admonitions. An officer yelled in her ear, "Don't be fucking stupid" because it was "just a detention." An officer placed Ms. Clentworth into the back of a separate squad car from her husband.

- 4 -

16. It was a hot July day, and Ms. Clentworth and Mr. Maddock were confined in the back of vehicles without air conditioning or even a fan blowing. As Ms. Clentworth sat in the back of the sweltering police car, she realized the officers were searching Plaintiffs' car. She shouted out the window that she did not consent to a search of her vehicle. The officers ignored her. She continued to protest until an officer approached, said, "acknowledged," rolled up the windows, shut the doors, and locked her in with the heat.

17. Despite the lack of reasonable suspicion, probable cause, or consent, BHPD officers searched Plaintiffs' car. The approached the trunk with the dog at the ready and guns drawn. They found nothing.

18. After more time passed an officer rolled down the window next to Ms. Clentworth and questioned her without *Miranda* warnings or any explanation of why she had been stopped and arrested. The officer was wearing full tactical gear as he spoke with her. After the officer finished interrogating Ms. Clentworth, she had to beg to keep the window open a few inches so she could get some air. The officer acquiesced and returned to the large number of officers gathered. Plaintiffs could hear the officers discussing, "what to do with" them. More time passed before Plaintiffs were taken out of the patrol cars and uncuffed. They were told they were not free to leave, however. The couple was sat down on a curb under the midday sun under guard of armed officers.

19. Ms. Clentworth and Mr. Maddock were questioned as they sat on the curb still for another twenty-five minutes. The high-risk felony stop and de facto arrest lasted almost an hour. Eventually the officers released them without explanation. Ms. Clentworth repeatedly asked the officers why she and her husband had been stopped, but she was ignored.

20. A few weeks later, after persistently contacting the BHPD for information, Ms. Clentworth met with BHPD Lieutenant Terry Nutall to discuss the stop, detention, and arrest. While the Lieutenant was less than forthcoming, citing a

- 5 -

supposed "on-going investigation" for his recalcitrance, Ms. Clentworth was led to understand that the BHPD had requested that local businesses report large gift card purchases to assist in an investigation of credit card fraud. On July 22, 2015, an employee at the Beverly Blvd CVS had done as the police asked and reported the purchase Ms. Clentworth and Mr. Maddock lawfully made, along with their license plate, to BHPD. Despite the purchase having been entirely legal, following the thorough CVS anti-fraud protocols, and having taken place five days prior in time, BHPD performed a warrantless, high-risk felony stop.

**DAMAGES**

21. As a direct, proximate result of Defendants' acts and omissions, and the customs, practices, policies and decisions of the Defendants, Plaintiffs suffered and will continue to suffer great emotional, mental pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused, and will continue to cause, Plaintiffs to sustain general damages in a sum to be determined at trial.

22. The individually named and doe defendants, excluding defendants City of Beverly Hills and BHPD, acted outside the scope of their jurisdiction and without authorization of law. The aforementioned acts of those individual and doe defendants, and each of them, was willful, wanton, malicious and oppressive, with reckless disregard for or in deliberate indifference to and with the intent to deprive Plaintiffs of their constitutional rights, and did in fact violate the aforementioned rights, entitling Plaintiffs to exemplary and punitive damages in an amount to be proven at the trial.

**FIRST CLAIM FOR RELIEF**

**DEPRIVATION OF CIVIL RIGHTS -- 42 U.S.C. § 1983**

(First, Fourth and Fourteenth Amendment – Individual Liability)

23. The individual and doe defendants, while acting under color of law, deprived Plaintiffs of their civil rights under the First, Fourth and Fourteenth Amendments to record police actions and to be free from detention and arrest not

based on reasonable suspicion or probable cause, unreasonable searches, unreasonable seizures, and excessive force. These deprivations include, but are not limited to:

(a) Detaining Plaintiffs without reasonable suspicion and in an unreasonable manner;

(b) Threatening Plaintiffs by pointing firearms and deploying a police dog;

(c) Handcuffing Plaintiffs during an investigatory detention without reasonable suspicion that they were armed and dangerous;

(d) Pointing weapons at, and handcuffing more tightly, Plaintiff Rachel Clentworth in retaliation for her attempt to record the officers with her cell phone, a First-Amendment protected activity;

(e) Searching Plaintiffs' property without consent or probable cause;

(f) Arresting Plaintiffs without probable cause and in an unreasonable manner; and

(g) Continuing to detain and arrest Plaintiffs after any arguable grounds for reasonable suspicion or probable cause dissipated.

24. The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power that shock the conscience. They are fundamentally unfair, arbitrary and oppressive, and unrelated to any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order. The above acts and omissions were consciously chosen from among various alternatives.

25. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiffs were injured in their health and persons, and will continue to suffer great mental pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension as alleged above.

26. The above mentioned individually named and Doe defendants, acted under color of law, and both separately and in concert. The aforementioned acts of those defendants, and each of them, were willful, wanton, malicious and oppressive, with reckless disregard or with deliberate indifference and with the intent to deprive Plaintiffs of their constitutional rights and privileges, and did in fact violate the aforementioned rights and privileges, entitling Plaintiffs to exemplary and punitive damages in an amount to be proven at the trial of this matter.

## SECOND CLAIM FOR RELIEF
## DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. § 1983
### (Entity and Supervisory Liability)

27. Plaintiffs are informed and believe and thereon alleges that, at all times herein mentioned, defendants City of Beverly Hills, BHPD, and the relevant policy maker, Chief Spagnoli, acted with deliberate indifference to, and in conscious and reckless disregard for the safety, security and constitutional and statutory rights of persons in or near the City of Beverly Hills such as Plaintiffs, including the right to be free from unreasonable searches and seizures, excessive force under the Fourth Amendment, in that they enacted, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, the following policies, practices and customs:

(a) Failing to adequately train, supervise, and control BHPD officers in uses of force, including the pointing of firearms at people not reasonably suspected to be armed and dangerous, and including the use of purported handcuffing techniques to deliberately cause pain and injuries;

(b) Failing to adequately train, supervise, and control BHPD officers in making traffic stops based on probable cause by, among other things, allowing them to carry out "high risk" felony stops without adequate justification, or based on their own faulty or incomplete investigations;

(c) Failing to adequately train, supervise and control BHPD officers in conducting searches of persons or property pursuant to detentions or arrests;

(d) Failing to adequately train, supervise, and control BHPD officers in conducting detentions without reasonable suspicion or arrests without probable cause;

(e) Failing to adequately train, supervise, and control their officers in proper communication and appropriate responses to members of the public, including enforcing the basic rule that only one officer should give commands during a field contact and those commands should be able to be clearly understood by the alleged suspect(s);

(f) Failing to investigate and to discipline officers involved in abusing their authority; and

(g) Condoning and encouraging their officers in the belief that they can violate the rights of persons such as the Plaintiffs with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

The foregoing are intended to be illustrative and not exhaustive.

28. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiffs were injured in their health and persons, and will continue to suffer great mental pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiffs to sustain damages as alleged above.

**PRAYER**

WHEREFORE, Plaintiffs request relief as follows, and according to proof, against each defendant:

1. General and compensatory damages in an amount according to proof;
2. Special damages in an amount according to proof'
3. Exemplary and punitive damages against each individual and Doe defendant, but not against the City of Beverly Hills or the BHPD, in an amount according to proof;
4. Costs of suit, including attorneys' fees, under 42 U.S.C. § 1988; and
5. Such other relief as may be warranted or as is just and proper.

Dated:   July 22, 2016                    THE LAW OFFICES OF JOHN BURTON

                                    By:   /S/ John Burton
                                          John Burton
                                          Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiffs demand trial by jury.

Dated:  July 22, 2016                     THE LAW OFFICES OF JOHN BURTON

                                    By:   /S/ John Burton
                                          John Burton
                                          Attorneys for Plaintiffs